# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

**DEBORAH LAUFER,**
       **Plaintiff,**

**v.**                                       **Case No: 1:20-cv-588-RP**

**GALTESVAR OM, LLC.,**
       **Defendant.**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Attorneys For Plaintiff

Thomas B. Bacon
Thomas B. Bacon, P.A.
644 N. Mc Donald Street
Mt. Dora, FL 32757
tbb@thomasbaconlaw.com
954-478-7811

## I.  Introduction

Plaintiff, is a Florida resident and disabled person within the meaning of the Americans

With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"), and relies on a wheelchair or

cane to ambulate and is vision impaired. Defendant books rooms for its hotel through an online

online reservations service operated through multiple websites.  (Hereinafter "websites", "online

reservations service" or "ORS".) Laufer Affid., para. 6, Exhibit A attached hereto.  The purpose

of this ORS is so that Defendant can reach out and market to persons all over the country,

including Florida, in their own homes, to solicit their patronage, provide them with information

so that they can make a meaningful choice in planning trips, and, in some instances, book a room

at the hotel.  As such, the Defendant's ORS is required to comply with the requirements of 28

C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking

of accessible rooms and providing accurate and sufficient information as to whether or not all the

features at the hotel are accessible. Prior to the filing of this lawsuit, on multiple occasions,

Plaintiff reviewed the ORS for Defendant's hotel and found that it did not comply with the

Regulation.  Laufer Affid., para. 6. Plaintiff therefore filed the instant action for injunctive relief

pursuant to the ADA. Plaintiff also has a system to ensure that she properly maintains standing.

*Id*. at para. 8. She maintains a list of all hotels she has sued over  ORS violations. *Id.* She goes

through and updates this list constantly. *Id.* With respect to each hotel she sues or has sued, she

revisits the hotel's ORS shortly after the complaint is filed.  She also records the date when the

ORS is required to be complaint and then revisits it. By this system, Plaintiff has already

revisited the ORS for this hotel after the complaint was filed. *Id.*

Defendant does not contest the fact that its ORS discriminates against disabled persons.

Instead, Defendant filed its motion arguing that plaintiff lacks standing because she lives too far away from the hotel and cannot have a cause of action unless she intends to travel to the hotel. (Hereinafter "physical nexus" requirement.). Defendant's Motion is entirely devoid of any authority in support of its proposition. Defendant cites only *Laufer v. Laxmi & Sons, LLC*, 1:19-cv-01501 (BKS/ML) (Dkt. No. 15, at 7, May 6, 2020) and *Laufer v. Rohini, Inc*. 6:20-cv-382 (W.D. Tex.), in support of its claim that: "Courts around the country have started to catch onto this scheme...". Defendant's Brief, p. 2. What Defendant omits is that neither the *Laxmi* nor *Rohini* cases have issued any rulings other than that the plaintiff must file a brief on standing. Neither court cited any other case law involving ORS discrimination. Defendant also ignores the growing body of authorities that have considered and rejected Defendant's argument.

## II.     The Applicable Standard

Where issues of fact are central to both subject matter jurisdiction and a claim on the merits, a district court must assume jurisdiction and proceed to the merits. *Montez v. Dep't of the Navy*, 392 F.3d 147, 149-50 (5th Cir. 2004). "In circumstances where 'the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56." *Id*., quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).

In the case at bar, Defendant is challenging whether or not Plaintiff suffered an injury and whether or not she intends to return. These issues are inextricably intertwined with the merits of her claims under 42 U.S.C. Section 12182 and right to injunctive relief pursuant to 42 U.S.C. Section 12188. As Plaintiff is supplementing her response with an affidavit, this Court must

apply the standards of Rule 56. Under Rule 56, A court must recount the relevant facts in the

light most favorable to the non-moving party and make all justifiable inferences in her favor.

*Schoen v. Underwood*, 2012 U.S. Dist. Lexis 200869, *1 (W.D. Tx. 2012), citing *Anderson v.

*Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) ("[T]he  evidence of the nonmovant is to be

believed, and all justifiable inferences are to be drawn in his favor.").

## III.    Defendant's Theory Has Been Widely Rejected

Defendant fails to cite even a single case that actually supports its position and Defendant

ignores the overwhelming body of caselaw that hold that the law omits any requirement that the

disabled plaintiff intend to book a room or visit the hotel.  In *Parks v. Richard*, 2020 U.S. Dist.

Lexis 86790 (M.D. Fla. 2020), one court rejected the defendant's argument that the plaintiff

needed to intend to book a room at the hotel. The court held that the:

> ADA claim is based upon [defendant's] website failing to identify the accessible features
> of the motel and its rooms, in violation of 28 C.F.R. § 36.302(e)(1)(ii). Therefore, the
> relevant 'future injury' inquiry relates to the motel's website and reservation system,
> rather than the motel's physical property." [Citation omitted.] While Parks may have
> never visited the motel, he visited its website and several third-party sites.

*Id*. at *7.  In *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31,

(M.D. Fla. June 18, 2018), another court rejected a physical nexus argument, holding that the

plaintiff's injury occurred in comfort of her own home when she visited defendant's

discriminatory hotel website. In *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE

27 (S.D. Fla. 1/2/2020), another court rejected the defendant's  physical nexus argument, stating:

> Plaintiff alleges that (1) she visited Defendant's website to ascertain whether it met the
> requirements of 28 C.F.R. Section 36.302(e), (2) she intends to return to the website to
> test it for compliance and/or to reserve a guest room, and (3) Defendant's failure to
> comply with the Americans with Disabilities Act ("ADA") is ongoing and harmful to
> her..... Based on these allegations, the Court finds that Plaintiff has sufficiently alleged an
> injury-in-fact and an intent to the return to the website in the future.

In *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019), another

court rejected the physical nexus argument, stating:

> [Defendant]'s argument [] centers on whether [plaintiff] suffered a concrete and
> particularized injury only from visiting [the hotel's] website and not the physical
> premises. ....[V]isiting the website suffices.... [A] plaintiff's inability to fully and
> effectively use an establishment's website constitutes an injury-in-fact..... [T]he Court
> finds that [plaintiff] has sufficiently alleged an injury-in-fact as a result of visiting
> Lakeside's deficient website under 28 C.F.R. § 36.302(e)(1)(ii). She visited the website
> to review and assess the accessible features of the Lakeside Inn.  Because the website
> lacked the requisite information, she could not determine whether the physical location
> met her accessibility needs. Lakeside thus deprived her of the services otherwise
> available to the general public. These allegations are sufficient to establish a past injury
> for the purposes of standing. As with the past injury, the Court has previously held in a
> different context that alleging an intent to return to a website that threatens continued
> exposure to discrimination is sufficient to establish a threat of future injury. [Citation
> omitted.] Given the finding above that the alleged injury stems from [plaintiff's] visiting
> Lakeside's deficient website, the Court finds that the relevant inquiry is whether she is
> likely to return to the website again.

*Id*. at 7, 8, 9-10, 12.

In *Poschmann v. Fountain TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla.

2019), another court rejected the physical nexus argument, holding that the plaintiff's ADA

claim was based on the discriminatory website and, "[t]herefore, the relevant "future injury"

inquiry relates to the motel's website and reservation system, rather than the motel's physical

property." In *Poschmann v. Coral Reef of Key Biscayne Developers, Inc*., 2018 U.S. Dist. Lexis

87457. *8 (S.D. Fla. 2018), another court recognized the plaintiff's motive for returning to the

discriminatory website as either " to determine whether the Hotel is accessible to him, and, if so,

to reserve a room at the Hotel **or** to test the Hotel's Website reservation system for its

compliance with the ADA." (Emphasis added.) By inclusion of the word "or" the court held that

motive to review the website solely to test it was sufficient and that intending to book a room is

not required.  In *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34 (S.D. Ga.

7/1/20), another court granted default judgment after an evidentiary hearing, finding that the plaintiff suffered discrimination when she visited the non-compliant ORS. The court additionally found that the plaintiff had standing because she visited the ORS both before and after the lawsuit was filed "for the purpose of assessing the accessibility features of the property and to ascertain whether those sites met her accessibility needs as well as the requirements of 28 C.F.R. § 36.302(e)(1)." *Id.* at p. 5. Other courts rejected the argument that intent to book a room or visit the hotel is required. *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE 34 (6/6/19); *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19); *Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla. 1/28/20).

Numerous other courts have held that a disabled person suffers injury-in-fact when they visit a hotel's discriminatory online reservations service. See *Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing *Honeywell v. Harihar Inc.*, 2018 U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018); *Kennedy v. Floridian Hotel, Inc.*, 2018 U.S. Dist. LEXIS 207984, at *9 (S.D. Fla. 2018); *Poschmann v. Liberty Inn Motel, LLC*, 2:18-cv-14348, ECF No. 17 at 4-5 (S.D. Fla. Jan. 23, 2019); *Brooke v. Hotel Inv. Grp., Inc.*, 2017 U.S. Dist Lexis 150717, * 6 (D. Ariz. 2017); *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017). This injury occurs in the comfort of the plaintiff's own home. *Gold Sun,* at pp. 30-31 (plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website).

Numerous additional cases support the proposition that viewing a discriminatory commercial website constitutes injury-in-fact in the context of vision impairment based claims. See, e.g. *Carroll v. Fedfinancial Fed. Credit Union*, 324 F. Supp. 3d 658, 664 (E.D. Va. 2018);

*Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 294 (D. Mass. 2017); *Jones v. Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL 4694362, at *1 (N.D. Ga. Sept. 26, 2018); *Jones v. Family First Credit Union,* No. 1:17-CV-4592-SCJ, 2018 WL 5045231, at *4 (N.D. Ga. Aug. 6, 2018). For example, in *Camacho v. Vanderbilt Univ*., 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019), one court rejected the notion that the plaintiff's possible visit to the subject property was at issue, holding:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website...

Defendant's reference to the four part test (proximity of residence to the business, past patronage, plans to return, frequency of travel near the defendant) (hereinafter "Proximity Test") is also unavailing because numerous courts have held it has either limited or no applicability to hotel website cases.  See, e.g. *Camacho*,  2019 U.S. Dist. Lexis 209202, *30 (holding that cases applying Proximity Test to discrimination at physical properties are irrelevant to website discrimination claims); see also *Parks,* 2020 U.S. Dist. Lexis 86790 at *6;  *Gold Sun Hospitality, LLC*, 8:18-cv-842, DE 23, pp. 30-31;  *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019).  Another court has held that the Proximity test not applicable to commercial websites (in vision impaired discrimination) because (1) website cases do not involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017).  "The relevant 'future injury' inquiry relates to the [hotel's] website and reservation system, rather than the [hotel's]

physical property. *Sai Ram*, 2019 U.S. Dist. Lexis 80111, at *11.[1]

## IV.    Testers Have Standing

Testers have standing under Title III of the ADA. *Betancourt v. Ingram Park Mall, LP*, 735 F.Supp.2d 587, 595-96 (W.D. Tex. 2010)[2]. See also *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), citing *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1333-34 (11th Cir. 2013);. As such, the disabled person's motive is entirely irrelevant because all that matters is whether they encountered discrimination as defined by plain words the Statute. *Marod*, *passim*. Moreover, as the Eleventh Circuit explained, "[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*, 733 F.3d at 1326. The entire purpose of the ADA and its fee shifting provision was to eradicate discrimination against disabled persons by encouraging individuals to act as private attorneys general to actively enforce the provisions of these civil rights statutes. See *Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) ("All of these civil rights

_____

[1]The proximity test is also not applicable in the context of hotels because hotels are, by nature, established to accommodate travelers from afar. *Parks*, 2020 U.S. Dist. Lexis 86790 *6; *Bodley v. Plaza Management Corp*., 550 F.Supp.2d 1085, (D. Ariz. 2008); *D'Lil v. Best Western Encina Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006); *Access 4 All, Inc. V. Wintergreen Commercial P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); . *Access 4 All, Inc. v. 539 Absecon Blvd*., 2006 WL 1804578, at *3 (D.N.J. 2006). Indeed, at least one court has ruled that a plaintiff who lives **too close** to a hotel has no standing to sue for compliance. See *Access 4 All, Inc. v. Thirty East 30th Street, LLC*, 1:04-Civ-3683, DE 36, at 17 (S.D. N.Y. 12/11/06).

[2]*Betancourt* stands for the proposition that the definition of injury and a plaintiff's right to relief must be interpreted broadly. The court held that a disabled plaintiff suffers an ongoing injury so long as they are denied the opportunity to participate in or benefit from goods, services, etc. of the entity. 735 F.Supp.2d at 602.

laws depend heavily upon private enforcement..."); *Bruce v. City of Gainesville*, 177 F.3d 949,

952 (11th Cir. 1999)(applying to the ADA and stating "the enforcement of civil rights statutes by

plaintiffs as private attorneys general is an important part of the underlying policy behind the

law."); *Betancourt*, 735 F.Supp.2d at 595-96(noting that ADA testers serve as private attorneys

general, "vindicating a policy that Congress considered of the highest priority). Indeed, if it

were not for this Plaintiff, Defendant would be free to discriminate against disabled persons.

## V.     The Rules Of Statutory Construction Prohibit The Imposition Of A Physical Nexus Requirement

The plain words of the Statute and duly promulgated Regulation govern. "Statutory

interpretation always begins with the plain language of the statute,' which [the court] consider[s]

in 'the specific context in which that language is used, and the broader context of the statute as a

whole.'" *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009); *Jiminez v.*

*Quarterman*, 555 U.S. 113, 118 (2009). If the language is unambiguous, no further inquiry is

necessary. *Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010). "Our duty is to say what statutory

language means, not what it should mean, and not what it would mean if we had drafted it."

*Marod Supermarkets, Inc.*, 733 F.3d at 1333-34 (addressing tester standing), citing *T-Mobile*

*South, LLC v. City of Milton, Ga.*, 728 F.3d 1274, 2013 WL 4750549, at *10 (11th Cir. 2013).

"We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable.".

*Marod*, 733 F.3d at 1334, citing *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*.

More significantly, if such additional restrictive language is found elsewhere in the

Statute, but not in the provisions governing the case at bar, such exclusion is dispositive.

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987); see also *Patel v. McElroy*, 143 F.3d 56, 60 (2nd. Cir 1997).

Plaintiff's claims are based on the following: 42 U.S.C. Section 12182(a) provides:

(a) General rule
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations

42 U.S.C. Section 12182(b)(2)(A)(ii).

This latter subsection is the subject of regulations promulgated by the Department Of Justice ("DOJ").[3] Specifically, the DOJ promulgated  28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), which provides:

(1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities

---

[3]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA. *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018).

until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

The Statute and Regulation are directly on point and unambiguously spell out all the elements of a cause of action. Failure of an online reservations system to comply with the requirements of the Regulation constitutes a failure to comply with 42 U.S.C. Section 12182(b)(2)(A)(ii). This qualifies as "discrimination" and is thus a violation of 42 U.S.C. Section 12182(a) and is thus fully actionable without more required.

A website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(unpublished opinion)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same). 42 U.S.C. Section 12182(a) clearly spells out a complete cause of action as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation..." Because the websites are a "service", all that is required is that a disabled person be deprived of full and equal enjoyment of this "service".[4] Once that occurs, all the elements are satisfied to establish a cause of action. Conspicuously absent from the Regulation or the Statute is any requirement that the disabled person must additionally intend to be a customer or, in this case, book a room and stay at the hotel as a requirement for a cause of action.

---

[4]An online reservations system may also be characterized as a privilege or advantage, also referenced in Subsection 12182(a).

10

Additionally, 42 U.S.C. Section 12188(a) provides that: "The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to **any person who is being subjected to discrimination** on the basis of disability in violation of this subchapter..." (Emphasis added.) 42 U.S.C. Section 12182(b)(2)(A) expressly provides that "discrimination" includes a violation of 42 U.S.C. Section 12182(b)(2)(A)(ii). Because a non-compliant ORS violates this latter subsection, it is therefore "discrimination" and thus actionable to "any person" who encounters it.

The rules of statutory construction mandate a finding that a physical nexus requirement can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections. As set forth in the following cases, the imposition of substantially similar requirements have been extensively considered and rejected because they were noted to be present in other statutes or subsections, but absent from the applicable sections or subsections governing the claims before the courts reviewing them.

In *Marod*, the Eleventh Circuit held that a disabled tester has standing to pursue a Title III ADA case for violations of 42 U.S.C. Section 12182. Generally, it held that a plaintiff's motive and intent are entirely irrelevant and that there is no requirement that they be a client or customer or a bona fide customer. In this regard, the Eleventh Circuit relied on Supreme Court cases and applied the rules of statutory construction.

Both *Marod*, 733 F.3d at 1333, and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), held that an ADA plaintiff suing under 42 U.S.C. Section 12182(a) does not have to be a "client or customer" of the defendant. In both cases, the Eleventh Circuit and Supreme Court noted that a **different** subsection of the same statute contained a "client or customer" requirement that was

not present in the plain language of Subsection 12182(a). Therefore, both courts held, the requirement could not be applied. Because the "client or customer" language was present in one subsection, but missing from the subsection that governed, the requirement could not be imposed. In *PGA Tour*, 532 U.S. at 678-79, the defendant had argued that the plaintiff had no standing to sue unless he was a "client or customer" of the place of public accommodation. The Court rejected this notion. As the Court observed, the Statute's "client or customer" limitation was set forth in only one Subsection of the Statute, but missing from others that governed the case before it. Specifically, Section 12182(b)(1)(A)(iv) contained the "clients or customers" limitation. However, the Subsection at issue in *PGA Tour*, namely 12182(a)[5] **did NOT** contain this limiting language. Therefore, the Court stated that: "clause (iv) is not literally applicable to Title III's general rule prohibiting discrimination against disabled individuals. Title III's broad general rule contains no express "clients or customers" limitation..." *PGA Tour*, 532 U.S. at 679 (citing Subsection 12182(a)). Therefore, as the Supreme Court observed, limiting language contained in one Subsection of Title III cannot be applied to other Subsections of the same statute where that language is missing. This "client or customer" analysis regarding was similarly applied by the *Marod* Court when it held that testers have standing, that they do not need to be a client or customer, and that their motive is irrelevant. 733 F.3d at 1333-34. However, the *Marod* Court additionally relied heavily on other similar opinions involving different language and applying the rules of statutory construction.

In *Marod*, the Eleventh Circuit considered other cases applying other civil rights statutes. Among these was *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), discussed by the

_____

[5]Subsection 12182(a) is the same Subsection that governs the instant action.

12

*Marod* Court at 733 F.3d at 1330. As noted by *Marod* regarding *Havens*:

> The Supreme Court concluded that a black tester who was misinformed about the availability of a rental property had alleged sufficient injury-in-fact to support standing to sue under § 804(d) of the FHA. Id. at 374, 102 S. Ct. at 1121-22. The plaintiff-tester in Havens Realty never intended to rent the apartment; rather, his sole purpose was to determine whether the defendant engaged in unlawful practices. *Id.*
>
> In considering the tester's standing, the Supreme Court in Havens Realty explained that the "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id. at 373, 102 S. Ct. at 1121* (alterations adopted) (quoting *Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975))*; see also *Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 1148 n.3, 35 L. Ed. 2d 536 (1973)* ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."). The statutory language of the relevant FHA provision, § 804(d), was therefore critical to the Supreme Court's decision. *Havens Realty, 455 U.S. at 373, 102 S. Ct. at 1121.*

*Marod*, 733 F.3d at 1330. The Court also noted:

> The Supreme Court therefore concluded that § 804(d) "establishes an enforceable right to **truthful information** concerning the availability of housing" and "[a] tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." [Citation omitted.]
>
> The Supreme Court admonished "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and **without any intention of buying or renting a home**, does not negate the simple fact of injury within the meaning of § 804(d)." *Id. at 374; 102 S. Ct. at 1121.* The Supreme Court explained that "[w]hereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, *42 U.S.C. § 3604(a)*, required that there be a 'bona fide offer' to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d)." *Havens Realty, 455 U.S. at 374; 102 S. Ct. at 1122.*

*Marod*, 733 F.3d at 1330-31 (emphasis added).

The case at bar is substantially similar to *Havens Realty*. Under *Havens Realty*, the plain

language of the statute gave a right of action to a civil rights tester who encountered

**discriminatory information** about an apartment **even though they did not intend to rent the**

**apartment**. In other words, it was not necessary that the person intended to rent or visit the

physical location. Rather, encountering the discriminatory information was sufficient.

In *Marod*, the Court also noted that other anti-discrimination statutes required that a plaintiff have "bona fide" status. *Marod*, 733 F.3d at 1333. Because the bona fide requirement was contained in other statutes, but not included in the applicable provisions of 42 U.S.C. 12182, its requirement could not be imposed. *Id.*

In *Havens Realty*, the Supreme Court applied the same rule of statutory construction, noting that a requirement that a plaintiff be a "bona fide patron" was included in one subsection of the applicable statute, but missing from the subsection that applied to the case before it. Therefore, the bona fide requirement did not apply. *Havens Realty*, 455 U.S. at 374.

In *Marod*, the Court stated:

These examples illustrate that Congress has said so expressly when it wants to limit the class of people protected by anti-discrimination statutes to only clients or customers or to people of bona fide status. But Congress expressed no such limitation in the parts of Title III that are relevant to Plaintiff Houston's lawsuit. This absence of legislative language restricts our interpretation, as we are "not allowed to add or subtract words from a statute."

733 F.3d at 1333-34.

The ability or inability to obtain information in violation of a statute was also recognized as an actionable injury by the Supreme Court in *Federal Election Commission v. Akins*, 524 U.S. 11, 20-25 (1998), which ruled that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III. In this regard the Supreme Court stated:

Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 105 L. Ed. 2d 377, 109 S. Ct. 2558 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to

14

sue").

524 U.S. at 21. Numerous courts in this Circuit have recognized the right to sue over informational violations created as an injury by statute. See *Landrum v. Blackbird Enters., LLC*, 214 F.Supp.3d 566, 570 (S.D. Tex. 2016)(citing *Havens Realty* in stating that the "failure to provide information in accordance with a statute could constitute concrete injury."). In *Dyson v. Sky Chefs, Inc.*, 2017 U.S. Dist. Lexis 92637, * 10-11 (N. D. Tx. 2017), one court note that: "The Supreme Court has held that a 'plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.'" citing *LaFollette v RoBal, Inc*., 2017 U.S. Dist. LEXIS 47144, (N.D. Ga. 2017) (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998)). In *Treece v. Perrier Condo. Owners Ass'n*, 2020 U.S. Dist. LEXIS 26511, *11 (E.D. La. 2020), a court followed *Havens Realty* in holding that it was not necessary for a plaintiff to apply to rent an apartment to suffer injury regarding his statutory right to truthful information. See also *Moore v. Radian Group*, 233 F.Supp.2d 819 (E.D. Tx. 2002)(infringement of right to truthful information is cognizable injury).

Under the above cited cases, an ADA plaintiff does not have to be a client or customer or a bona fide customer and his motive or intent are entirely irrelevant. All that is required is that they encounter discrimination within the plain meaning of the words of the statute. This includes discrimination in the form of information without any visit or intent to visit the property which is the subject of that information. There is no additional requirement that they intend to use or visit the physical property, unless the applicable statutory provisions expressly say so. Thus, there no room left to reach an interpretation that a disabled plaintiff must intend to book a room at a hotel, or actually visit the hotel, before they can have a cause of action for a discriminatory online reservations system. Any language imposing such a requirement is completely absent. Neither

the general provision of 42 U.S.C. Section 12182(a), the definition of "discrimination" under 42 U.S.C. Section 12182(b)(2)(A)(ii), nor the Regulation contain any such requirement. To the contrary, failure by the Defendant to make its online reservations system compliant with the Regulation constitutes "discrimination" within the meaning of Subsection 12182(b)(2)(A)(ii)**.** This then is prohibited by the general provision of Subsection 12182(a) because the disabled person is deprived of full and equal access to a service. It does not then matter whether an ADA tester intended to do anything more than what is set forth in the statute. The words "no individual shall be discriminated against..." means that **any** disabled person who encounters a discriminatory service has a cause of action, regardless of whether they are a tester and regardless of their intent. Moreover, Subsection 12188's granting of injunctive relief to "any person who is being subjected to discrimination" cannot be interpreted to impose any requirements that would reduce "any person" to "only some people".

To the extent there is any room for doubt, there is in fact **another** subsection of the Statute which **DOES** contain language imposing a physical nexus requirement. 42 U.S.C. Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities *from* fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

This Subsection was the subject of an Eleventh Circuit decision in *Rendon v. Valleycrest Prods.*, 294 F.3d 1279 (11th Cir. 2002), which involved a telephone screening process for potential contestants on Who Wants To Be A Millionare. The discriminatory telephone screening process ("eligibility criteria"), only became actionable if it additionally screened out disabled persons "from fully and equally enjoying any goods, services..." In that Subsection, the

word "from" is critical because its insertion in the Subsection means that a disabled person's encounter with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria prevents them **"from"** full and equal access to goods or services. This word, however, is conspicuously absent from either the Statute's Subsections or the Regulation that govern online reservations systems. Because an ORS is a "service" of the place of public accommodation, and failure to comply with the Regulation qualifies as "discrimination", then nothing more is necessary. When a disabled person encounters a non-compliant ORS, he has been "discriminated against on the basis of disability in the full and equal enjoyment of ... services, ..., privileges, advantages..."

Thus, the plaintiff has standing and there is no additional requirement that they actually visit the hotel or intend to book a room. In short, the Plaintiff's encounter with the discriminatory website IS the injury, and this occurs in the plaintiff's own home.

The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) supports this conclusion. In *Spokeo*, the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury[6]. However, the *Spokeo* Court specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required. In this regard, the *Spokeo* Court stated:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute

---

[6]It should be noted that the Fair Credit Reporting Act was intended to protect one class of persons, debtors, from incorrect information provided to a different class of persons, creditors. By contrast, in anti-discrimination statutes such as the ADA, recipients of the information and the class of protected persons are the same.

injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. At 1549-50. In the *Akins* decision referenced by *Spokeo*, the Supreme Court, in turn, referenced *Havens Realty* as follows:

Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21. Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*, but instead acknowledged the body of law to which *Havens Realty* belongs.[7] Indeed, the concurring and dissenting opinions in *Spokeo* both expressly recognized *Havens Realty*. *Spokeo,* 136 S.Ct. at 1553, 1555 (Thomas J., Concurring)(Ginsburg, J. Dissenting).

## VI.    Plaintiff Has Established Intent To Return

Various courts have held that status a tester " plausibly increases the likelihood that he or she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019), citing *Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, DE 23, pp. 31-32. See also *Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, *17 (D.N.J. 2006). *Marod*, 733 F.3d at 1336 (explaining that

---

[7]In *Marod*, passim, this Circuit Court found substantial similarities between the ADA and the statute at issue in *Havens Realty* with regard to the issue of standing and the lack of any motive requirement of the individual plaintiff.

plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury). See also *Betancourt*, 735 F.Supp.2d at 604 (holding that by being denied the opportunity to visit free of discrimination, a disabled plaintiff has a present injury). In cases such as *Juscinska*, which discuss a plaintiff's intent to go to the hotel, such discussion is typically in the context of the court's assessment of the plausibility that the plaintiff would return to the website (rather than whether they suffered an injury-in-fact). For instance, in *Poschmann*, 2018 U.S. Dist. Lexis 87457 at *8, the court held that returning to the website to book a room is one valid reason and checking it for compliance with the Regulation is another.

Critically, in the instant case, the Plaintiff has a system whereby she makes sure she visits the ORS in each and every case shortly after the respective complaint is filed, then again when the defendant is required to bring its ORS into compliance with the law. *Id.* Thus, she insures that she either will again suffer injury if the defendant does not comply with the law, or will benefit if the defendant does indeed comply. Under *Parks.*, 2020 U.S. Dist. Lexis 86790, at *7, such a system of rechecking suffices to establish standing. Moreover, not only did this Plaintiff visit the hotel's discriminatory online reservations system multiple times before she filed suit May 4, 6, 7, 8, and 17), but she has visited it again since filing suit (July 16), pursuant to her system. Laufer Affid., paras. 6, 8. Thus, Laufer proved to be true to her word when she averred that she intended to return to the websites in the near future. At least two courts have held that post-complaint visits establish standing. See *Payne v. Boston Market Corp.*, E.D. N.C. 5:12-cv-354, DE 16 (3/12/13); *Kennedy v. Omega Gas*, 9:17-cv-80103-RLR, DE 60, pp. 6-7 (S.D. Fla. 8/30/17).

## VII. Plaintiff Does Intend To Visit Texas

Even though such is not necessary for purposes of standing, Plaintiff does indeed intend to visit Texas as soon as the Covid crisis abates. Laufer Affid., para. 5. However, because this Defendant and so many others fail to comply with the law, Plaintiff lacks the information she requires to make a meaningful choice. *Id.*

## VIII. Defendant Is Liable For Discriminatory Third Party Websites

At p. 1 of its Brief, Defendant references its ORS operated through Expedia, Hotels.com, Orbitz, Priceline and Agoda, as if it is not liable for discrimination through these sites. However, Defendant would have this Court ignore the plain language of the Regulation, which imposes responsibility for ORS's operated through third parties. promulgated 28 C.F.R. Section 36.302(e)(1)("...or through a third party"). See also *Parks v. Richard*, 2:20-cv-227, DE 28, passim (M.D. Fla. 7/21//20)(hotel liable for discrimination through third party sites).

## IX. Defendant Improperly References Settlement Discussions

At. p. 3 of its Brief, Defendant improperly referenced settlement discussions. Defendant is being selectively and deliberately misleading and misrepresents the entirety of the conversations that occurred. Defendant omitted the fact that Plaintiff offered to let this Court decide the amount of fees if the parties were unable to negotiate the amount and further suggested that the Defendant consult with a lawyer. Defendant's statement must be stricken, as it violates Fed. R. Evid. 408.

## X. Conclusion

For the foregoing reasons, Defendant's Motion must be denied.

Respectfully submitted,

By: /s/ Thomas B. Bacon

Thomas B. Bacon
Thomas B. Bacon, P.A.
644 N. Mc Donald Street
Mt. Dora, FL 32757
tbb@thomasbaconlaw.com
954-478-7811

**I HEREBY CERTIFY** that, on July 22nd 2020, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will automatically send e-

mail notification of such filing to the attorneys of record.

*/s/ Philip Michael Cullen, III*